Marc Voisenat (CSB# 170935)
2329A Eagle Avenue
Alameda, Ca. 94501
Tel: (510) 263-8664
Fax: (510) 272-9158

Attorney for Debtor
Mae Eddie Phillips

## United States Bankruptcy Court

## Northern District of California

In re:

Mae Eddie Phillips

        Debtor

Case No.: 19-40887

Chapter 13

**DECLARATION OF MAE EDDIE PHILLIPS IN SUPPORT OF MOTION TO APPROVE SALE OF 5271-5273 LOCKSLEY AVENUE, OAKLAND, CA 94618**

Date: February 14, 2020
Time: 11:00 a.m.
Crtrm: 215

I, Mae Eddie Phillips, declare and state the following:

1. I am the debtor in the above referenced action. If called to testify, I could and would testify to those facts set forth below from my own personal knowledge.

2. I have entered into a purchase agreement to sell the real property located at 5271 & 5273 Locksley Avenue Oakland, CA 94618 ("Locksley") to NAMC Holdings, Jing Yi Construction for $1,100,000 (One Million One Hundred Thousand dollars). A true and correct copy of the purchase agreement is attached as Exhibit A.

3. I do not have any relationship with the proposed purchaser and the sale is an arm's length transaction.

4. I filed the above case on April 16, 2019. To my knowledge, the only known secured liens against the real property are: (a) a deed of trust in favor of U.S. Bank, N.A. (b) a disputed judgment lien in favor of Ellen Vander Laan. A copy of a preliminary title report showing the liens is attached as Exhibit B.

5. From the proceeds of sale, U.S Bank, N.A. will receive the approximate sum of $406,676.68 with the arrears of 203,562.16 being paid by the chapter 13 trustee through check exchange. I dispute the amount claimed by U.S. Bank, N.A. Ellen Vander Laan did not file a proof of claim and will be paid from escrow if she has an allowed claim. There are also approximately $4,000 in miscellaneous liens that will be paid through escrow.

6. I also intend to pay Commissions in the amount of $55,000 to Compass Realty and estimated closing costs and taxes in the approximate amount of $9,000.

7. Escrow will be handled by First American Title whose address is 6232 LaSalle Avenue, Oakland, CA 946113211 and telephone number (510) 285-2302 and fax number (866) 493-5436. The escrow officer is Andrea Steiner whose email is asteiner@firstam.com with file no.: 0 107-6054891.

8. I will receive my homestead exemption of $175,000 from escrow upon closing.

9. The balance of the net proceeds in the approximate amount of $500,000 will be submitted to the chapter 13 trustee to pay of the debtor's chapter 13 plan.

10. I am informed and believe that the Buyer is purchasing Locksley in good faith and for fair consideration and believe that the sale of Locksley is in the best interests of my estate and its creditors.

11.     I have conducted an investigation of Locksley and have evaluated my options regarding the sale. I believe that the proposed offer for Locksley as set forth herein represents the best offer for the property.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>February 7, 2020</u>

/s/ Mae Eddie Phillips
Mae Eddie Phillips

DocuSign Envelope ID: A41D3644-E39D-4E09-97EE-BFD54AFB6844



**CALIFORNIA
ASSOCIATION
OF REALTORS®**

# RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT AND JOINT ESCROW INSTRUCTIONS

**C✪MPASS**

(C.A.R. Form RIPA, Revised 12/18)

**Date Prepared:** *January 28, 2020*

**1. OFFER:**

**A. THIS IS AN OFFER FROM** *NAMC Holdings, Jing Yi Construction* ("Buyer").
☐ Individual(s), ☐ A Corporation, ☒ A Partnership, ☐ An LLC, ☐ An LLP, ☐ Other

**B. THE REAL PROPERTY** to be acquired is *5271 Locksley Ave*, situated in
*Oakland* (City), *Alameda* (County), California, *94618* (Zip Code), Assessor's Parcel No. *14-1230-3* ("Property").

**C. THE PURCHASE PRICE** offered is *One Million, One Hundred Thousand*
Dollars $ *1,100,000.00*.

**D. CLOSE OF ESCROW** shall occur on _____ (date) (or ☒ *15* **Days** After Acceptance).

**E.** Buyer and Seller are referred to herein as the "Parties." Brokers are not Parties to this Agreement.

**2. AGENCY:**

**A. DISCLOSURE:** The Parties each acknowledge receipt of a ☒ "Disclosure Regarding Real Estate Agency Relationships" (C.A.R. Form AD).

**B. CONFIRMATION:** The following agency relationships are confirmed for this transaction:

**Seller's Brokerage Firm** *Compass* License Number *01527235*
Is the broker of (check one): ☒ the seller; or ☐ both the buyer and seller. (dual agent)
**Seller's Agent** *Andrea Gordon* License Number *01233563*
Is (check one): ☒ the Seller's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**Buyer's Brokerage Firm** *Compass* License Number *01866771*
Is the broker of (check one): ☒ the buyer; or ☐ both the buyer and seller. (dual agent)
**Buyer's Agent** *Erik Schuler* License Number *01509384*
Is (check one): ☒ the Buyer's Agent. (salesperson or broker associate) ☐ both the Buyer's and Seller's Agent. (dual agent)

**C. POTENTIALLY COMPETING BUYERS AND SELLERS:** The Parties each acknowledge receipt of a ☒ "Potential Representation of More than One Buyer or Seller - Disclosure and Consent" (C.A.R. Form PRBS).

**3. FINANCE TERMS:** Buyer represents that funds will be good when deposited with Escrow Holder.

**A. INITIAL DEPOSIT:** Deposit shall be in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ *35,000.00*
**(1) Buyer Direct Deposit:** Buyer shall deliver deposit directly to Escrow Holder by electronic funds transfer, ☐ cashier's check, ☐ personal check, ☐ other _____ within 3 business days after Acceptance (or _____);
**OR (2)** ☐ **Buyer Deposit with Agent:** Buyer has given the deposit by personal check (or _____) to the agent submitting the offer (or to _____), made payable to *Sellers Choice* . The deposit shall be held uncashed until Acceptance and then deposited with Escrow Holder within **3** business days after Acceptance (or _____).
Deposit checks given to agent shall be an original signed check and not a copy.
(Note: Initial and increased deposits checks received by agent shall be recorded in Broker's trust fund log.)

**B. INCREASED DEPOSIT:** Buyer shall deposit with Escrow Holder an increased deposit in the amount of . . . $ _____
within _____ **Days** After Acceptance (or _____).
If the Parties agree to liquidated damages in this Agreement, they also agree to incorporate the increased deposit into the liquidated damages amount in a separate liquidated damages clause (C.A.R. Form RID) at the time the increased deposit is delivered to Escrow Holder.

**C.** ☒ **ALL CASH OFFER:** No loan is needed to purchase the Property. This offer is NOT contingent on Buyer obtaining a loan. Written verification of sufficient funds to close this transaction IS ATTACHED to this offer or ☐ Buyer shall, within **3 (or** _____ **) Days** After Acceptance, Deliver to Seller such verification.

**D. LOAN(S):**
**(1) FIRST LOAN:** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
This loan will be conventional financing **OR** ☐ FHA, ☐ VA, ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ subject to financing, ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
**(2)** ☐ **SECOND LOAN** in the amount of . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ _____
This loan will be conventional financing **OR** ☐ Seller financing (C.A.R. Form SFA), ☐ assumed financing (C.A.R. Form AFA), ☐ subject to financing, ☐ Other _____ . This loan shall be at a fixed rate not to exceed _____ % or, ☐ an adjustable rate loan with initial rate not to exceed _____ %. Regardless of the type of loan, Buyer shall pay points not to exceed _____ % of the loan amount.
**(3) FHA/VA:** For any FHA or VA loan specified in 3D(1), Buyer has **17 (or** _____ **) Days** After Acceptance to Deliver to Seller written notice (C.A.R. Form FVA) of any lender-required repairs or costs that Buyer requests Seller to pay for or otherwise correct. Seller has no obligation to pay or satisfy lender requirements unless agreed in writing. A FHA/VA amendatory clause (C.A.R. Form FVAC) shall be a part of this transaction.

Buyer's Initials (X _____)(X *MSM* )
Seller's Initials ( *AB* )( _____ )

© 2018, California Association of REALTORS®, Inc.
**RIPA REVISED 12/18 (PAGE 1 OF 12)**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 1 OF 12)**

Property Address: **_5271 Locksley Ave, Oakland, CA 94618_**                    Date: **_January 28, 2020_**

**E.  ADDITIONAL FINANCING TERMS:** _____

**F.  BALANCE OF DOWN PAYMENT OR PURCHASE PRICE** in the amount of . . . . . . . . . . . . . . . . . . . . . $ ___**_1,065,000.00_**
to be deposited with Escrow Holder pursuant to Escrow Holder instructions.

**G.  PURCHASE PRICE (TOTAL):** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $ ___**_1,100,000.00_**

**H.  VERIFICATION OF DOWN PAYMENT AND CLOSING COSTS:** Buyer (or Buyer's lender or loan broker pursuant to paragraph 3J(1)) shall, within **3 (or ____) Days** After Acceptance, Deliver to Seller written verification of Buyer's down payment and closing costs. ( ☐ Verification attached.)

**I.  APPRAISAL CONTINGENCY AND REMOVAL:** This Agreement is (or ☒ is NOT) contingent upon a written appraisal of the Property by a licensed or certified appraiser at no less than the purchase price. Buyer shall, as specified in paragraph 19B(3), in writing, remove the appraisal contingency or cancel this Agreement within **17 (or ____) Days** After Acceptance.

**J.  LOAN TERMS:**

**(1) LOAN APPLICATIONS:** Within **3 (or ____) Days** After Acceptance, Buyer shall Deliver to Seller a letter from Buyer's lender or loan broker stating that, based on a review of Buyer's written application and credit report, Buyer is prequalified or preapproved for any NEW loan specified in paragraph 3D. If any loan specified in paragraph 3D is an adjustable rate loan, the prequalification or preapproval letter shall be based on the qualifying rate, not the initial loan rate. ( ☐ Letter attached.)

**(2) LOAN CONTINGENCY:** Buyer shall act diligently and in good faith to obtain the designated loan(s). Buyer's qualification for the loan(s) specified above **is a contingency** of this Agreement unless otherwise agreed in writing. If there is no appraisal contingency or the appraisal contingency has been waived or removed, then failure of the Property to appraise at the purchase price does not entitle Buyer to exercise the cancellation right pursuant to the loan contingency if Buyer is otherwise qualified for the specified loan. Buyer's contractual obligations regarding deposit, balance of down payment and closing costs **are not contingencies** of this Agreement.

**(3) LOAN CONTINGENCY REMOVAL:**
Within **21 (or ____) Days** After Acceptance, Buyer shall, as specified in paragraph 19, in writing, remove the loan contingency or cancel this Agreement. If there is an appraisal contingency, removal of the loan contingency shall not be deemed removal of the appraisal contingency.

**(4)** ☒ **NO LOAN CONTINGENCY:** Obtaining any loan specified above is NOT a contingency of this Agreement. If Buyer does not obtain the loan and as a result Buyer does not purchase the Property, Seller may be entitled to Buyer's deposit or other legal remedies.

**(5) LENDER LIMITS ON BUYER CREDITS:** Any credit to Buyer, from any source, for closing or other costs that is agreed to by the Parties ("Contractual Credit") shall be disclosed to Buyer's lender. If the total credit allowed by Buyer's lender ("Lender Allowable Credit") is less than the Contractual Credit, then (i) the Contractual Credit shall be reduced to the Lender Allowable Credit, and (ii) in the absence of a separate written agreement between the Parties, there shall be no automatic adjustment to the purchase price to make up for the difference between the Contractual Credit and the Lender Allowable Credit.

**(6) ASSUMED OR SUBJECT TO FINANCING:** Seller represents that Seller is not delinquent on any payments due on any loans. If the Property is acquired subject to an existing loan, Buyer and Seller are advised to consult with legal council regarding the ability of an existing lender to call the loan due, and the consequences thereof.

**K.  BUYER STATED FINANCING:** Seller is relying on Buyer's representation of the type of financing specified (including but not limited to, as applicable, all cash, amount of down payment, or contingent or non-contingent loan). Seller has agreed to a specific closing date, purchase price and to sell to Buyer in reliance on Buyer's covenant concerning financing. Buyer shall pursue the financing specified in this Agreement. Seller has no obligation to cooperate with Buyer's efforts to obtain any financing other than that specified in the Agreement and the availability of any such alternate financing does not excuse Buyer from the obligation to purchase the Property and close escrow as specified in this Agreement.

**4. SALE OF BUYER'S PROPERTY:**

**A.** This Agreement and Buyer's ability to obtain financing are NOT contingent upon the sale of any property owned by Buyer.

**OR B.** ☐ This Agreement and Buyer's ability to obtain financing are contingent upon the sale of property owned by Buyer as specified in the attached addendum (C.A.R. Form COP).

**5. ADDENDA AND ADVISORIES:**

**A. ADDENDA:**

| | |
|---|---|
| ☐ Addendum # _____ (C.A.R. Form ADM) | |
| ☐ Back Up Offer Addendum (C.A.R. Form BUO) | ☐ Court Confirmation Addendum (C.A.R. Form CCA) |
| ☐ Septic, Well and Property Monument Addendum (C.A.R.  Form SWPI) | |
| ☐ Short Sale Addendum (C.A.R. Form SSA) | ☐ Other |

**B. BUYER AND SELLER ADVISORIES:**

| | |
|---|---|
| ☐ Probate Advisory (C.A.R. Form PA) | ☒ Buyer's Inspection Advisory (C.A.R. Form BIA) |
| ☐ Trust Advisory (C.A.R. Form TA) | ☐ Statewide Buyer and Seller Advisory (C.A.R. Form SBSA) |
| ☐ Short Sale Information and Advisory (C.A.R. Form SSIA) | ☐ REO Advisory (C.A.R. Form REO) |
| | ☐ Other |

**6. OTHER TERMS: _This is an "AS-IS" Sale._**

_____

Buyer's Initials ( X ___ )( X __MSM__ )                    Seller's Initials ( ___ )( ___ )

**RIPA REVISED 12/18 (PAGE 2 OF 12)**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 2 OF 12)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    5271 Locksley Ave



DocuSign Envelope ID: A41D3644-E39D-4E09-97EE-BFD54AFB6844

Property Address: **5271 Locksley Ave, Oakland, CA 94618** Date: **January 28, 2020**

## 7. ALLOCATION OF COSTS

**A. INSPECTIONS, REPORTS AND CERTIFICATES:** Unless otherwise agreed, in writing, this paragraph only determines who is to pay for the inspection, test, certificate or service ("Report") mentioned; it **does not determine who is to pay for any work recommended or identified in the Report.**

(1) ☐ Buyer ☒ Seller shall pay for a natural hazard zone disclosure report, including tax ☐ environmental ☐ Other: _____ prepared by **JCP Report**

(2) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____

(3) ☐ Buyer ☐ Seller shall pay for the following Report _____ prepared by _____

**B. GOVERNMENT REQUIREMENTS AND RETROFIT:**

(1) ☐ Buyer ☒ Seller shall pay for smoke alarm and carbon monoxide device installation and water heater bracing, if required by Law. Prior to Close Of Escrow ("COE"), Seller shall provide Buyer written statement(s) of compliance in accordance with state and local Law, unless Seller is exempt.

(2) (i) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government inspections and reports if required as a condition of closing escrow under any Law.

(ii) ☐ Buyer ☒ Seller shall pay the cost of compliance with any other minimum mandatory government retrofit standards required as a condition of closing escrow under any Law, whether the work is required to be completed before or after COE.

(iii) Buyer shall be provided, within the time specified in paragraph 19A, a copy of any required government conducted or point-of-sale inspection report prepared pursuant to this Agreement or in anticipation of this sale of the Property.

(3) ☐ Buyer ☐ Seller shall pay for installation of approved fire extinguisher(s), sprinkler(s), and hose(s), if required by Law, which shall be installed prior to Close Of Escrow. Prior to Close Of Escrow, Seller shall provide Buyer a written statement of compliance, if required by Law.

(4) ☐ Buyer ☐ Seller shall pay for installation of drain cover and anti-entrapment device or system for any pool or spa meeting the minimum requirements permitted by the U.S. Consumer Products and Safety Commission.

**C. ESCROW AND TITLE:**

(1) (a) ☒ Buyer ☐ Seller shall pay escrow fee _____

(b) Escrow Holder shall be **Sellers Choice**

(c) The Parties shall, within **5 (or ___ ) Days** After receipt, sign and return Escrow Holder's general provisions.

(2) (a) ☒ Buyer ☐ Seller shall pay for **owner's** title insurance policy specified in paragraph 18E _____

(b) Owner's title policy to be issued by **Sellers Choice**

(Buyer shall pay for any title insurance policy insuring Buyer's **lender**, unless otherwise agreed in writing.)

**D. OTHER COSTS:**

(1) ☒ Buyer ☒ Seller shall pay County transfer tax or fee **Split 50/50**

(2) ☒ Buyer ☒ Seller shall pay City transfer tax or fee **Split 50/50**

(3) ☐ Buyer ☐ Seller shall pay Homeowners' Association ("HOA") transfer fee _____

(4) Seller shall pay HOA fees for preparing documents required to be delivered by Civil Code §4525.

(5) ☐ Buyer ☐ Seller shall pay HOA fees for preparing all documents other than those required by Civil Code §4525.

(6) Buyer to pay for any HOA certification fee.

(7) ☐ Buyer ☐ Seller shall pay for any private transfer fee _____

(8) ☐ Buyer ☐ Seller shall pay for _____

(9) ☒ Buyer ☐ Seller shall pay for **Transaction Management fee not to exceed $600.00**

(10) ☐ Buyer ☐ Seller shall pay for the cost, not to exceed $ _____ , of a ☐ standard ☐ upgraded one-year home warranty plan, issued by _____ , with the following optional coverages: ☐ Air Conditioner ☐ Pool/Spa ☐ Other: _____ Buyer is informed that home warranty plans have many optional coverages in addition to those listed above. Buyer is advised to investigate these coverages to determine those that may be suitable for Buyer.

OR ☒ Buyer waives the purchase of a home warranty policy. Nothing in this paragraph precludes Buyer's purchasing a home warranty policy during the term of the Agreement.

## 8. ITEMS INCLUDED IN AND EXCLUDED FROM SALE:

**A. NOTE TO BUYER AND SELLER:** Items listed as included or excluded in the MLS, flyers or marketing materials are **not** included in the purchase price or excluded from the sale unless specified in paragraph 8B, C or D.

**B. ITEMS INCLUDED IN SALE:**

(1) All EXISTING fixtures and fittings that are attached to the Property;

(2) EXISTING electrical, mechanical, lighting, plumbing and heating fixtures, ceiling fans, fireplace inserts, gas logs and grates, solar power systems, built-in appliances, window and door screens, awnings, shutters, window coverings, attached floor coverings, television antennas, satellite dishes, air coolers/conditioners, pool/spa equipment, garage door openers/remote controls, mailbox, in-ground landscaping, trees/shrubs, water features and fountains, water softeners, water purifiers and security systems/alarms.

(3) Seller represents that all items included in the purchase price, unless otherwise specified, are owned by Seller, except (i) _____ and (ii) the items and systems identified pursuant to 8B(4).

(4) **LEASED OR LIENED ITEMS AND SYSTEMS:** Seller shall, within the time specified in paragraph 19A, (i) disclose to Buyer if any item or system specified in paragraph 8B or otherwise included in the sale is leased, or not owned by Seller, or specifically subject to a lien or other encumbrance, and (ii) Deliver to Buyer all written materials (such as lease, warranty, etc.) concerning any such item. Buyer's ability to assume any such lease, or willingness to accept the Property subject to any such lien or encumbrance, is a contingency in favor of Buyer and Seller as specified in paragraph 19B and C.

(5) Except as otherwise specified or disclosed, all items included shall be transferred free and clear of liens and encumbrances and without Seller warranty regardless of value.

Buyer's Initials ( X _____ )( X **MSM** )          Seller's Initials ( _____ )( _____ )

**RIPA REVISED 12/18 (PAGE 3 OF 12)**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 3 OF 12)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com          5271 Locksley Ave

**(6)** A complete inventory of all personal property of Seller currently used in the operation of the Property and included in the purchase price shall be delivered to Buyer within the time specified in paragraph 19.

**(7)** Seller shall deliver title to the personal property by Bill of Sale, free of all liens and encumbrances, and without warranty of condition.

**(8)** As additional security for any note in favor of Seller for any part of the purchase price, Buyer shall execute a UCC-1 Financing Statement to be filed with the Secretary of State, covering the personal property included in the purchase, replacement thereof, and insurance proceeds.

C. **ITEMS EXCLUDED FROM SALE:** _All Sellers Possessions_

D. **OTHER ITEMS:** Existing integrated phone and home automation systems, including necessary components such as intranet and Internet-connected hardware or devices, control units (other than non-dedicated mobile devices, electronics and computers) and applicable software, permissions, passwords, codes and access information, are ( ) are NOT) included in the sale.

9. **SECURITY DEPOSITS:** Security deposits, if any, to the extent they have not been applied by Seller in accordance with any rental agreement and current Law, shall be transferred to Buyer on Close Of Escrow. Seller shall notify each tenant, in compliance with the California Civil Code.

10. **CLOSING AND POSSESSION:**

A. Buyer intends (or ☐ does not intend) to occupy any unit in the Property as Buyer's primary residence.

B. **Seller-occupied or vacant property:** Possession shall be delivered to Buyer: (i) ☐ at 6 PM or ( ☐ AM/ ☐ PM) on the date of Close Of Escrow; (ii) ☐ no later than ___ calendar days after Close Of Escrow; or (iii) ☐ at ☐ AM/ ☐ PM on ___.

C. **Seller Remaining in Possession After Close Of Escrow:** If Seller has the right to remain in possession after Close Of Escrow, (i) the Parties are advised to sign a separate occupancy agreement such as ☐ C.A.R. Form SIP, for Seller continued occupancy of less than 30 days, ☐ C.A.R. Form RLAS for Seller continued occupancy of 30 days or more; and (ii) the Parties are advised to consult with their insurance and legal advisors for information about liability and damage or injury to persons and personal and real property; and (iii) Buyer is advised to consult with Buyer's lender about the impact of Seller's occupancy on Buyer's loan.

D. **Tenant occupied units:** Possession and occupancy, subject to the rights of tenants under existing leases, shall be delivered to Buyer on Close Of Escrow.

E. At Close Of Escrow: **(i)** Seller assigns to Buyer any assignable warranty rights for items included in the sale; and **(ii)** Seller shall Deliver to Buyer available Copies of any such warranties. Brokers cannot and will not determine the assignability of any warranties.

F. At Close Of Escrow, unless otherwise agreed in writing, Seller shall provide keys, passwords, codes and/or means to operate all locks, mailboxes, security systems, alarms, home automation systems and intranet and Internet-connected devices included in the purchase price, and garage door openers. If the Property is a condominium or located in a common interest subdivision, Buyer may be required to pay a deposit to the Homeowners' Association ("HOA") to obtain keys to accessible HOA facilities.

11. **STATUTORY AND OTHER DISCLOSURES (INCLUDING LEAD-BASED PAINT HAZARD DISCLOSURES) AND CANCELLATION RIGHTS:**

A. **LEAD-BASED PAINT HAZARD DISCLOSURES:**

**(1)** Seller shall, within the time specified in paragraph 19, deliver to Buyer, if required by Law, Federal Lead-Based Paint Disclosures and pamphlet ("Lead Disclosures"). If the Lead Disclosures are delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After delivery by deposit in the mail, by giving written notice of cancellation to Seller or Seller's agent. (Lead Disclosures sent by mail must be sent certified mail or better.)

**(2)** Buyer shall, within the time specified in paragraph 19, return a Signed Copy of the Lead Disclosure to Seller.

B. **NATURAL AND ENVIRONMENTAL HAZARDS:** Within the time specified in paragraph 19, Seller shall, if required by Law: **(i)** deliver to Buyer earthquake guides (and questionnaire) and environmental hazards booklet; and **(ii)** even if exempt from the obligation to provide a NHD, disclose if the Property is located in a Special Flood Hazard Area; Potential Flooding (Inundation) Area; Very High Fire Hazard Zone; State Fire Responsibility Area; Earthquake Fault Zone; Seismic Hazard Zone; and **(iii)** disclose any other zone as required by Law and provide any other information required for those zones.

C. **WITHHOLDING TAXES:** Within the time specified in paragraph 19A, to avoid required withholding, Seller shall Deliver to Buyer or qualified substitute, an affidavit sufficient to comply with federal (FIRPTA) and California withholding Law (C.A.R. Form AS or QS).

D. **MEGAN'S LAW DATABASE DISCLOSURE:** Notice: Pursuant to Section 290.46 of the Penal Code, information about specified registered sex offenders is made available to the public via an Internet Web site maintained by the Department of Justice at **www.meganslaw.ca.gov.** Depending on an offender's criminal history, this information will include either the address at which the offender resides or the community of residence and ZIP Code in which he or she resides. (Neither Seller nor Brokers are required to check this website. If Buyer wants further information, Broker recommends that Buyer obtain information from this website during Buyer's inspection contingency period. Brokers do not have expertise in this area.)

E. **NOTICE REGARDING GAS AND HAZARDOUS LIQUID TRANSMISSION PIPELINES:** This notice is being provided simply to inform you that information about the general location of gas and hazardous liquid transmission pipelines is available to the public via the National Pipeline Mapping System (NPMS) Internet Web site maintained by the United States Department of Transportation at **http://www.npms.phmsa.dot.gov/.** To seek further information about possible transmission pipelines near the Property, you may contact your local gas utility or other pipeline operators in the area. Contact information for pipeline operators is searchable by ZIP Code and county on the NPMS Internet Web site.

F. **CONDOMINIUM/PLANNED DEVELOPMENT DISCLOSURES:**

**(1) SELLER HAS: 7 (or ___ ) Days** After Acceptance to disclose to Buyer whether the Property is a condominium, or is located in a planned development or other common interest subdivision (C.A.R. Form SPQ or ESD).

**(2)** If the Property is a condominium or is located in a planned development or other common interest subdivision, Seller has **3 (or ___ ) Days** After Acceptance to request from the HOA (C.A.R. Form HOA1): **(i)** Copies of any documents required by Law; **(ii)** disclosure of any pending or anticipated claim or litigation by or against the HOA; **(iii)** a statement containing the location and number of designated parking and storage spaces; **(iv)** Copies of the most recent 12 months of HOA minutes for regular and special meetings; and **(v)** the names and contact information of all HOAs governing the Property (collectively, "CI Disclosures"). Seller shall

Buyer's Initials (X _____ )(X _NCSM_ )                          Seller's Initials ( _____ )( _____ )

Case: 19-40887   Doc# 103   Filed: 02/07/20   Entered: 02/07/20 16:39:22   Page 7 of 21

Property Address: **5271 Locksley Ave, Oakland, CA  94618**  Date: **January 28, 2020**

itemize and Deliver to Buyer all CI Disclosures received from the HOA and any CI Disclosures in Seller's possession. Buyer's approval of CI Disclosures is a contingency of this Agreement as specified in paragraph 19B(3). The Party specified in paragraph 7, as directed by escrow, shall deposit funds into escrow or direct to HOA or management company to pay for any of the above.

**G. WATER CONSERVING PLUMBING DEVICES:** Section 1101.5 of the Civil Code, requires that by January 1, 2019, all multi-family residential and commercial real property be equipped with water-conserving plumbing devices. Seller shall disclose in writing whether the property includes any noncompliant plumbing fixtures. Seller may use C.A.R. Form SPQ or ESD. See C.A.R. form WCMD for further information

**H. ELEVATED ELEMENTS:** If the Property is part of a building with 3 or more dwelling units, Health and Safety Code Section 17973(m) requires that an inspection of any exterior elevated elements (such as, but not limited to, balconies, decks, stairways and walkways) be completed by January 1, 2025 and every 6 years thereafter. Seller shall, within the time specified in paragraph 19, provide to Buyer (1) a copy of the inspection and accompanying report and, if any corrective work is required, proof that corrective work has been completed in accordance with code and permit requirements, or (2) a statement (i) that no such inspection has been made, or (ii) if made, that no corrective work has been completed in accordance with the Health and Safety Code.

**12. RESIDENTIAL 1-4 PROPERTIES:**

**A.** Seller shall, within the time specified in paragraph 19A, Deliver to Buyer: (i) if required by Law, a fully completed: Federal Lead-Based Paint Disclosures (C.A.R. Form FLD) and pamphlet ("Lead Disclosures"); and (ii) unless exempt, fully completed disclosures or notices required by sections 1102 et. seq. and 1103 et. seq. of the Civil Code ("Statutory Disclosures"). Statutory Disclosures include, but are not limited to, a Real Estate Transfer Disclosure Statement ("TDS"), Natural Hazard Disclosure Statement ("NHD"), notice or actual knowledge of release of illegal controlled substance, notice of special tax and/or assessments (or, if allowed, substantially equivalent notice regarding the Mello-Roos Community Facilities Act of 1982 and Improvement Bond Act of 1915) and, if Seller has actual knowledge, of industrial use and military ordnance location (C.A.R. Form SPQ or ESD).

**B.** Any Statutory Disclosure required by this paragraph is considered fully completed if Seller has answered all questions and completed and signed the Seller section(s) and the Seller's Agent, if any, has completed and signed the Seller's Brokerage Firm section(s), or, if applicable, an Agent Visual Inspection Disclosure (C.A.R. Form AVID). Nothing stated herein relieves a Buyer's Brokerage Firm, if any, from the obligation to (i) conduct a reasonably competent and diligent visual inspection of the accessible areas of the Property and disclose, on Section IV of the TDS, or an AVID, material facts affecting the value or desirability of the Property that were or should have been revealed by such an inspection or (ii) complete any sections on all disclosures required to be completed by Buyer's Brokerage Firm.

**C. Note to Buyer and Seller:** Waiver of Statutory and Lead Disclosures is prohibited by Law.

**D.** Within the time specified in paragraph 19A, **(i)** Seller, unless exempt from the obligation to provide a TDS, shall, within the time specified in paragraph 19A, complete and provide Buyer with a Seller Property Questionnaire (C.A.R. Form SPQ) **(ii)** if Seller is not required to provide a TDS, Seller shall complete and provide Buyer with a Exempt Seller Disclosure (C.A.R. Form ESD).

**E.** Buyer shall, within the time specified in paragraph 19B(1), return Signed Copies of the Statutory, Lead and other disclosures to Seller.

**F.** In the event Seller or Seller's Brokerage Firm, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly provide a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**G.** If any disclosure or notice specified in paragraph 12A, or subsequent or amended disclosure or notice is Delivered to Buyer after the offer is Signed, Buyer shall have the right to cancel this Agreement within **3 Days** After Delivery in person, or **5 Days** After Delivery by deposit in the mail, or by an electronic record satisfying the Uniform Electronic Transactions Act (UETA), by giving written notice of cancellation to Seller or Seller's agent.

**13. SELLER DOCUMENTATION AND ADDITIONAL DISCLOSURE: Within the time specified in paragraph 19, Seller shall disclose, make available or Deliver, as applicable, to Buyer the following information.**

**A. RENTAL/SERVICE AGREEMENTS:** Seller shall make available to Buyer for inspection and review: **(i)** all current leases, rental agreements, service contracts, and other agreements pertaining to the operation of the Property; **(ii)** a rental statement including names of tenants, rental rates, period of rental, date of last rent increase, security deposits, rental concessions, rebates or other benefits, if any, and a list of delinquent rents and their duration. Seller represents that no tenant is entitled to any rebate, concession, or other benefit, except as set forth in these documents. Seller represents that the documents to be furnished are those maintained in the ordinary and normal course of business.

**B. INCOME AND EXPENSE STATEMENTS:** Seller shall make available to Buyer the books and records for the Property, including a statement of income and expense for the 12 months preceding Acceptance. Seller represents that the books and records are those maintained in the ordinary and normal course of business, and used by Seller in the computation of federal and state income tax returns.

**C.** ☐ **TENANT ESTOPPEL CERTIFICATES:** (If checked) Seller shall Deliver to Buyer tenant estoppel certificates (C.A.R. Form TEC) completed by Seller or Seller's agent, and signed by tenants, acknowledging: **(i)** that tenants' rental or lease agreements are unmodified and in full force and effect (or if modified, stating all such modifications); **(ii)** that no lessor defaults exist; and **(iii)** stating the amount of any prepaid rent or security deposit.

**D. SURVEY, PLANS, AND ENGINEERING DOCUMENTS:** Seller shall, at no cost to Buyer, Deliver to Buyer Copies of surveys, plans, specifications, and engineering documents, if any, prepared on Seller's behalf or in Seller's possession.

**E. PERMITS:** If in Seller's possession, Seller shall Deliver to Buyer Copies of all permits and approvals concerning the Property, obtained from any governmental entity, including, but not limited to, certificates of occupancy, conditional use permits, development plans, and licenses and permits pertaining to the operation of the Property.

**F. STRUCTURAL MODIFICATIONS:** Seller shall disclose to Buyer in writing any known structural additions or alterations to, or the installation, alteration, repair or replacement of, significant components of the structure(s) upon the Property.

**G. SELLER REPRESENTATION:** Seller represents that Seller has no actual knowledge: **(i)** of any current pending lawsuit(s), investigation(s), inquiry(ies), action(s), or other proceeding(s) affecting the Property or the right to use and occupy it; **(ii)** of any unsatisfied mechanic's or materialman lien(s) affecting the Property; and **(iii)** that any tenant of the Property is the subject of a bankruptcy. If Seller receives any such notice prior to Close of Escrow, Seller shall immediately notify Buyer.

Buyer's Initials (X _____)(X _____)   Seller's Initials (_____)(_____)

**RIPA REVISED 12/18 (PAGE 5 OF 12)**



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    5271 Locksley Ave

Case: 19-40887    Doc# 103    Filed: 02/07/20    Entered: 02/07/20 16:39:22    Page 8 of 21

DocuSign Envelope ID: A41D3644-E39D-4E09-97EE-BFD54AFB6844

Property Address: **5271 Locksley Ave, Oakland, CA 94618**    Date: **January 28, 2020**

**H. GOVERNMENTAL COMPLIANCE:**
  **(1)** Seller shall disclose to Buyer any improvements, additions, alterations, or repairs to the Property made by Seller, or known to Seller to have been made, without required governmental permits, final inspections, and approvals.
  **(2)** Seller shall disclose to Buyer if Seller has actual knowledge of any notice of violations of Law filed or issued against the Property.

**14. SUBSEQUENT DISCLOSURES:** In the event Seller, prior to Close Of Escrow, becomes aware of adverse conditions materially affecting the Property, or any material inaccuracy in disclosures, information or representations previously provided to Buyer, Seller shall promptly Deliver a subsequent or amended disclosure or notice, in writing, covering those items. **However, a subsequent or amended disclosure shall not be required for conditions and material inaccuracies** of which Buyer is otherwise aware, or which are **disclosed in reports provided to or obtained by Buyer or ordered and paid for by Buyer.**

**15. CHANGES DURING ESCROW:**
  **A.** Prior to Close Of Escrow, Seller may engage in the following acts ("Proposed Changes"), subject to Buyer's rights in paragraph 15B: **(i)** rent or lease any vacant unit or other part of the premises; **(ii)** alter, modify or extend any existing rental or lease agreement; **(iii)** enter into, alter, modify or extend any service contract(s); or **(iv)** change the status of the condition of the Property.
  **B. (1)** At least 7 (or _____ ) **Days** Prior to any Proposed Changes, Seller shall Deliver written notice to Buyer of such Proposed Changes.
  **(2)** Within 5 (or _____ ) Days After receipt of such notice, Buyer, in writing, may give Seller notice of Buyer's objection to the Proposed Changes in which case Seller shall not make the Proposed Changes.

**16. CONDITION OF PROPERTY:** Unless otherwise agreed in writing: (i) the Property is sold (a) "AS-IS" in its PRESENT physical condition as of the date of Acceptance and (b) subject to Buyer's Investigation rights; (ii) the Property, including pool, spa, landscaping and grounds, is to be maintained in substantially the same condition as on the date of Acceptance; and (iii) all debris and personal property not included in the sale shall be removed by Close Of Escrow.
  **A.** Seller shall, within the time specified in paragraph 19A; (i) DISCLOSE KNOWN MATERIAL FACTS AND DEFECTS affecting the Property, including known insurance claims within the past five years, (ii) disclose the number of units on the Property which have been legally approved, if known by Seller and (iii) make any and all other disclosures required by Law.
  **B.** Buyer has the right to conduct Buyer Investigations of the Property and, as specified in paragraph 19B, based upon information discovered in those investigations: (i) cancel this Agreement; or (ii) request that Seller make Repairs or take other action.
  **C.** Buyer is strongly advised to conduct investigations of the entire Property in order to determine its present condition. Seller may not be aware of all defects affecting the Property or other factors that Buyer considers important. Property improvements may not be built according to code, in compliance with current Law, or have had permits issued.

**17. BUYER'S INVESTIGATION OF PROPERTY AND MATTERS AFFECTING PROPERTY:**
  **A.** Buyer's acceptance of the condition of, and any other matter affecting the Property, is a contingency of this Agreement as specified in this paragraph and paragraph 19B. Within the time specified in paragraph 19B(1), Buyer shall have the right, at Buyer's expense unless otherwise agreed, to conduct inspections, investigations, tests, surveys and other studies ("Buyer Investigations"), including, but not limited to, the right to: **(i)** inspect for lead-based paint and other lead-based paint hazards; **(ii)** inspect for wood destroying pests and organisms. Any inspection for wood destroying pests and organisms shall be prepared by a registered Structural Pest Control company; shall cover the main building and attached structures; may cover detached structures; shall NOT include water tests of shower pans on upper level units unless the owners of property below the shower consent; shall NOT include roof coverings; and, if the Property is a unit in a condominium or other common interest subdivision, the inspection shall include only the separate interest and any exclusive-use areas being transferred, and shall NOT include common areas; and shall include a report ("Pest Control Report") showing the findings of the company which shall be separated into sections for evident infestation or infections (Section 1) and for conditions likely to lead to infestation or infection (Section 2); **(iii)** review the registered sex offender database; **(iv)** confirm the insurability of Buyer and the Property including the availability and cost of flood and fire insurance; **(v)** review and seek approval of leases that may need to be assumed by Buyer; and **(vi)** satisfy Buyer as to any matter specified in the attached Buyer's Inspection Advisory (C.A.R. Form BIA). Without Seller's prior written consent, Buyer shall neither make nor cause to be made: **(i)** invasive or destructive Buyer Investigations except for minimally invasive testing required to prepare a Pest Control Report; or **(ii)** inspections by any governmental building or zoning inspector or government employee, unless required by Law.
  **B.** Seller shall make the Property available for all Buyer Investigations. Buyer shall **(i)** as specified in paragraph 19B, complete Buyer Investigations and either remove the contingency or cancel this Agreement, and **(ii)** give Seller, at no cost, complete Copies of all such Investigation reports obtained by Buyer, which obligation shall survive the termination of this Agreement.
  **C.** Seller shall have water, gas, electricity and all operable pilot lights on for Buyer's Investigations and through the date possession is made available to Buyer.
  **D. Buyer indemnity and seller protection for entry upon property:** Buyer shall: **(i)** keep the Property free and clear of liens; **(ii)** repair all damage arising from Buyer Investigations; and **(iii)** indemnify and hold Seller harmless from all resulting liability, claims, demands, damages and costs. Buyer shall carry, or Buyer shall require anyone acting on Buyer's behalf to carry, policies of liability, workers' compensation and other applicable insurance, defending and protecting Seller from liability for any injuries to persons or property occurring during any Buyer Investigations or work done on the Property at Buyer's direction prior to Close Of Escrow. Seller is advised that certain protections may be afforded Seller by recording a "Notice of Non-Responsibility" (C.A.R. Form NNR) for Buyer Investigations and work done on the Property at Buyer's direction. Buyer's obligations under this paragraph shall survive the termination of this Agreement.

**18. TITLE AND VESTING:**
  **A.** Within the time specified in paragraph 19, Buyer shall be provided a current preliminary title report ("Preliminary Report"). The Preliminary Report is only an offer by the title insurer to issue a policy of title insurance and may not contain every item affecting title. Buyer's review of the Preliminary Report and any other matters which may affect title are a contingency of this Agreement as specified in paragraph 19B. The company providing the Preliminary Report shall, prior to issuing a Preliminary Report, conduct a search of the General Index for all Sellers except banks or other institutional lenders selling properties they acquired through foreclosure (REOs), corporations, and government entities. Seller shall within 7 Days After Acceptance, give Escrow Holder a completed Statement of Information.
  **B.** Title is taken in its present condition subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters, whether of record or not, as of the date of Acceptance except for: (i) monetary liens of record (which Seller is obligated to pay off) unless Buyer is assuming those obligations or taking the Property subject to those obligations; and (ii) those matters which Seller has agreed to remove in writing.

Buyer's Initials (x_____)(x __MSM__ )    Seller's Initials ( _____ )( _____ )

**RIPA REVISED 12/18 (PAGE 6 OF 12)**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 6 OF 12)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com **5271 Locksley Ave**

Case: 19-40887   Doc# 103   Filed: 02/07/20   Entered: 02/07/20 16:39:22   Page 9 of 21

DocuSign Envelope ID: A41D3644-E39D-4E09-97EE-BFD54AFB6844

Property Address: **5271 Locksley Ave, Oakland, CA 94618**                                    Date: **January 28, 2020**

**C.** Within the time specified in paragraph 19A, Seller has a duty to disclose to Buyer all matters known to Seller affecting title, whether of record or not.

**D.** At Close Of Escrow, Buyer shall receive a grant deed conveying title (or, for stock cooperative or long-term lease, an assignment of stock certificate or of Seller's leasehold interest), including oil, mineral and water rights if currently owned by Seller. Title shall vest as designated in Buyer's supplemental escrow instructions. THE MANNER OF TAKING TITLE MAY HAVE SIGNIFICANT LEGAL AND TAX CONSEQUENCES. CONSULT AN APPROPRIATE PROFESSIONAL.

**E.** Buyer shall receive a Standard Coverage Owner's CLTA policy of title insurance. An ALTA policy or the addition of endorsements may provide greater coverage for Buyer. A title company, at Buyer's request, can provide information about the availability, desirability, coverage, and cost of various title insurance coverages and endorsements. If Buyer desires title coverage other than that required by this paragraph, Buyer shall instruct Escrow Holder in writing and shall pay any increase in cost.

**19. TIME PERIODS; REMOVAL OF CONTINGENCIES; CANCELLATION RIGHTS: The following time periods may only be extended, altered, modified or changed by mutual written agreement. Any removal of contingencies or cancellation under this paragraph by either Buyer or Seller must be exercised in good faith and in writing (C.A.R. Form CR or CC).**

**A. SELLER HAS: 7 (or ____ ) Days** After Acceptance to Deliver to Buyer all Reports, disclosures and information for which Seller is responsible under paragraphs 5A, 6, 7, 8B(4), 11A, B, C, F, and G, 12A and D, 13, 16A, and 18A. Buyer after first Delivering to Seller a Notice to Seller to Perform (C.A.R. Form NSP) may cancel this Agreement if Seller has not Delivered the items within the time specified.

**B. (1) BUYER HAS: 17 (or _5_ ) Days** After Acceptance, unless otherwise agreed in writing, to:

    **(i)** complete all Buyer Investigations; review all disclosures, reports, lease documents to be assumed by Buyer pursuant to paragraph 8B(4) and other applicable information, which Buyer receives from Seller; and approve all matters affecting the Property; and **(ii)** Deliver to Seller Signed Copies of Statutory and Lead Disclosures and other disclosures Delivered by Seller in accordance with paragraph 12A.

    **(2)** Within the time specified in paragraph 19B(1), Buyer may request that Seller make repairs or take any other action regarding the Property (C.A.R. Form RR). Seller has no obligation to agree to or respond to (C.A.R. Form RRRR) Buyer's requests.

    **(3)** By the end of the time specified in paragraph 19B(1) (or as otherwise specified in this Agreement), Buyer shall Deliver to Seller a removal of the applicable contingency or cancellation (C.A.R. Form CR or CC) of this Agreement. However, if any report, disclosure or information for which Seller is responsible is not Delivered within the time specified in paragraph 19A, then Buyer has **5 (or ____ ) Days** After Delivery of any such items, or the time specified in paragraph 19B(1), whichever is later, to Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement.

    **(4) Continuation of Contingency:** Even after the end of the time specified in paragraph 19B(1) and before Seller cancels, if at all, pursuant to paragraph 19C, Buyer retains the right, in writing, to either (i) remove remaining contingencies, or (ii) cancel this Agreement based on a remaining contingency. Once Buyer's written removal of all contingencies is Delivered to Seller, Seller may not cancel this Agreement pursuant to paragraph 19C(1).

**C. SELLER RIGHT TO CANCEL:**

    **(1) Seller right to Cancel; Buyer Contingencies:** If, by the time specified in this Agreement, Buyer does not Deliver to Seller a removal of the applicable contingency or cancellation of this Agreement, then Seller, after first Delivering to Buyer a Notice to Buyer to Perform (C.A.R. Form NBP), may cancel this Agreement. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

    **(2) Seller right to Cancel; Buyer Contract Obligations:** Seller, after first delivering to the Buyer a NBP, may cancel this Agreement if, by the time specified in this Agreement, Buyer does not take the following action(s): **(i)** Deposit funds as required by paragraph 3A or 3B or if the funds deposited pursuant to paragraph 3A or 3B are not good when deposited; **(ii)** Deliver a notice of FHA or VA costs or terms as required by paragraph 3D(3) (C.A.R. Form FVA); **(iii)** Deliver a letter as required by paragraph 3J(1); **(iv)** Deliver verification as required by paragraph 3C or 3H or if Seller reasonably disapproves of the verification provided by paragraph 3C or 3H; **(v)** In writing assume or accept leases or liens specified in 8B4; **(vi)** Return Statutory and Lead Disclosures as required by paragraph 11A(2) and 12E; or **(vii)** Sign or initial a separate liquidated damages form for an increased deposit as required by paragraphs 3B and 30B; or **(viii)** Provide evidence of authority to sign in a representative capacity as specified in paragraph 28. In such event, Seller shall authorize the return of Buyer's deposit, except for fees incurred by Buyer.

**D. NOTICE TO BUYER OR SELLER TO PERFORM:** The NBP or NSP shall: **(i)** be in writing; **(ii)** be signed by the applicable Buyer or Seller; and **(iii)** give the other Party at least **2 (or ____ ) Days** After Delivery (or until the time specified in the applicable paragraph, whichever occurs last) to take the applicable action. A NBP or NSP may not be Delivered any earlier than **2 Days** Prior to the expiration of the applicable time for the other Party to remove a contingency or cancel this Agreement or meet an obligation specified in paragraph 19.

**E. EFFECT OF BUYER'S REMOVAL OF CONTINGENCIES:** If Buyer removes, in writing, any contingency or cancellation rights, unless otherwise specified in writing, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and expense for Repairs or corrections pertaining to that contingency or cancellation right, or for the inability to obtain financing.

**F. CLOSE OF ESCROW:** Before Buyer or Seller may cancel this Agreement for failure of the other Party to close escrow pursuant to this Agreement, Buyer or Seller must first Deliver to the other Party a demand to close escrow (C.A.R. Form DCE). The DCE shall: **(i)** be signed by the applicable Buyer or Seller; and **(ii)** give the other Party at least **3 (or ____ ) Days** After Delivery to close escrow. A DCE may not be Delivered any earlier than **3 Days** Prior to the scheduled close of escrow.

**G. EFFECT OF CANCELLATION ON DEPOSITS:** If Buyer or Seller gives written notice of cancellation pursuant to rights duly exercised under the terms of this Agreement, the Parties agree to Sign mutual instructions to cancel the sale and escrow and release deposits, if any, to the party entitled to the funds, less fees and costs incurred by that party. Fees and costs may be payable to service providers and vendors for services and products provided during escrow. Except as specified below, **release of funds will require mutual Signed release instructions from the Parties, judicial decision or arbitration award.** If either Party fails to execute mutual instructions to cancel escrow, one Party may make a written demand to Escrow Holder for the deposit (C.A.R. Form BDRD or SDRD). Escrow Holder, upon receipt, shall promptly deliver notice of the demand to the other Party. If, within 10 Days After Escrow Holder's

Buyer's Initials (X _____ )(x _____ )                              Seller's Initials ( _____ )( _____ )

**RIPA REVISED 12/18 (PAGE 7 OF 12)**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 7 OF 12)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Case: 19-40887   Doc# 105   Filed: 02/07/20   Entered: 02/07/20 16:39:22   Page 10 of 21

Property Address: **5271 Locksley Ave, Oakland, CA 94618**      Date: **January 28, 2020**

notice, the other Party does not object to the demand, Escrow Holder shall disburse the deposit to the Party making the demand. If Escrow Holder complies with the preceding process, each Party shall be deemed to have released Escrow Holder from any and all claims or liability related to the disbursal of the deposit. Escrow Holder, at its discretion, may nonetheless require mutual cancellation instructions. **A Party may be subject to a civil penalty of up to $1,000 for refusal to sign cancellation instructions if no good faith dispute exists as to who is entitled to the deposited funds (Civil Code §1057.3).**

20. **REPAIRS:** Repairs shall be completed prior to final verification of condition unless otherwise agreed in writing. Repairs to be performed at Seller's expense may be performed by Seller or through others, provided that the work complies with applicable Law, including governmental permit, inspection and approval requirements. Repairs shall be performed in a good, skillful manner with materials of quality and appearance comparable to existing materials. It is understood that exact restoration of appearance or cosmetic items following all Repairs may not be possible. Seller shall: **(i)** obtain invoices and paid receipts for Repairs performed by others; **(ii)** prepare a written statement indicating the Repairs performed by Seller and the date of such Repairs; and **(iii)** provide Copies of invoices and paid receipts and statements to Buyer prior to final verification of condition.

21. **ENVIRONMENTAL HAZARD CONSULTATION:** Buyer and Seller acknowledge: **(i)** Federal, state, and local legislation impose liability upon existing and former owners and users of real property, in applicable situations, for certain legislatively defined, environmentally hazardous substances; **(ii)** Broker(s) has/have made no representation concerning the applicability of any such Law to this transaction or to Buyer or to Seller, except as otherwise indicated in this Agreement; **(iii)** Broker(s) has/have made no representation concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property; and **(iv)** Buyer and Seller are each advised to consult with technical and legal experts concerning the existence, testing, discovery, location and evaluation of/for, and risks posed by, environmentally hazardous substances, if any, located on or potentially affecting the Property.

22. **AMERICANS WITH DISABILITIES ACT:** The Americans With Disabilities Act ("ADA") prohibits discrimination against individuals with disabilities. The ADA affects almost all commercial facilities and public accommodations. Residential properties are not typically covered by the ADA, but may be governed by its provisions if used for certain purposes. The ADA can require, among other things, that buildings be made readily accessible to the disabled. Different requirements apply to new construction, alterations to existing buildings, and removal of barriers in existing buildings. Compliance with the ADA may require significant costs. Monetary and injunctive remedies may be incurred if the Property is not in compliance. A real estate broker does not have the technical expertise to determine whether a building is in compliance with ADA requirements, or to advise a principal on those requirements. Buyer and Seller are advised to contact an attorney, contractor, architect, engineer or other qualified professional of Buyer or Seller's own choosing to determine to what degree, if any, the ADA impacts that principal or this transaction.

23. **FINAL VERIFICATION OF CONDITION:** Buyer shall have the right to make a final verification of the Property within **5 (or ____ ) Days** Prior to Close Of Escrow, NOT AS A CONTINGENCY OF THE SALE, but solely to confirm: **(i)** the Property is maintained pursuant to paragraph 16; **(ii)** Repairs have been completed as agreed; and **(iii)** Seller has complied with Seller's other obligations under this Agreement (C.A.R. Form VP).

24. **PRORATIONS OF PROPERTY TAXES AND OTHER ITEMS:** Unless otherwise agreed in writing, the following items shall be PAID CURRENT and prorated between Buyer and Seller as of Close Of Escrow: real property taxes and assessments, interest, rents, HOA regular, special, and emergency dues and assessments imposed prior to Close Of Escrow, premiums on insurance assumed by Buyer, payments on bonds and assessments assumed by Buyer, and payments on Mello-Roos and other Special Assessment District bonds and assessments that are now a lien. The following items shall be assumed by Buyer WITHOUT CREDIT toward the purchase price: prorated payments on Mello-Roos and other Special Assessment District bonds and assessments and HOA special assessments that are now a lien but not yet due. Property will be reassessed upon change of ownership. Any supplemental tax bills shall be paid as follows: **(i)** for periods after Close Of Escrow, by Buyer; and **(ii)** for periods prior to Close Of Escrow, by Seller (see C.A.R. Form SPT or SBSA for further information). TAX BILLS ISSUED AFTER CLOSE OF ESCROW SHALL BE HANDLED DIRECTLY BETWEEN BUYER AND SELLER. Prorations shall be made based on a 30-day month.

25. **SUCCESSORS AND ASSIGNS:** This Agreement shall be binding upon, and inure to the benefit of, Buyer and Seller and their respective successors and assigns, except as otherwise provided herein.

26. **COPIES:** Seller and Buyer each represent that Copies of all reports, documents, certificates, approvals and other documents that are furnished to the other are true, correct and unaltered Copies of the original documents, if the originals are in the possession of the furnishing party.

27. **BROKERS:**

   **A. COMPENSATION:** Seller or Buyer, or both, as applicable, agrees to pay compensation to Broker as specified in a separate written agreement between Broker and that Seller or Buyer. Compensation is payable upon Close Of Escrow, or if escrow does not close, as otherwise specified in the agreement between Broker and that Seller or Buyer.

   **B. SCOPE OF DUTY:** Buyer and Seller acknowledge and agree that Broker: **(i)** Does not decide what price Buyer should pay or Seller should accept; **(ii)** Does not guarantee the condition of the Property; **(iii)** Does not guarantee the performance, adequacy or completeness of inspections, services, products or repairs provided or made by Seller or others; **(iv)** Does not have an obligation to conduct an inspection of common areas or areas off the site of the Property; **(v)** Shall not be responsible for identifying defects on the Property, in common areas, or offsite unless such defects are visually observable by an inspection of reasonably accessible areas of the Property or are known to Broker; **(vi)** Shall not be responsible for inspecting public records or permits concerning the title or use of Property; **(vii)** Shall not be responsible for identifying the location of boundary lines or other items affecting title; **(viii)** Shall not be responsible for verifying square footage, representations of others or information contained in Investigation reports, Multiple Listing Service, advertisements, flyers or other promotional material; **(ix)** Shall not be responsible for determining the fair market value of the Property or any personal property included in the sale; **(x)** Shall not be responsible for providing legal or tax advice regarding any aspect of a transaction entered into by Buyer or Seller; and **(xi)** Shall not be responsible for providing other advice or information that exceeds the knowledge, education and experience required to perform real estate licensed activity. Buyer and Seller agree to seek legal, tax, insurance, title and other desired assistance from appropriate professionals.

   **C. BROKERAGE:** Neither Buyer nor Seller has utilized the services of, or for any other reason owes compensation to, a licensed real estate broker (individual or corporate), agent, finder, or other entity, other than as specified in this Agreement, in connection with any act relating to the Property, including, but not limited to, inquiries, introductions, consultations and negotiations leading to this Agreement. Buyer and Seller each agree to indemnify and hold the other, the Brokers specified herein and their agents, harmless from and against

Buyer's Initials ( X _____ )( X __MSM__ )       Seller's Initials ( _____ )( _____ )

**RIPA REVISED 12/18 (PAGE 8 OF 12)**

**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 8 OF 12)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     5271 Locksley Ave

Property Address: **5271 Locksley Ave, Oakland, CA 94618**      Date: **January 28, 2020**

any costs, expenses or liability for compensation claimed inconsistent with the warranty and representation in this paragraph.

**28. REPRESENTATIVE CAPACITY:** If one or more Parties is signing the Agreement in a representative capacity and not for him/herself as an individual then that Party shall so indicate in paragraph 40 or 41 and attach a Representative Capacity Signature Disclosure (C.A.R. Form RCSD). Wherever the signature or initials of the representative identified in the RCSD appear on the Agreement or any related documents, it shall be deemed to be in a representative capacity for the entity described and not in an individual capacity, unless otherwise indicated. The Party acting in a representative capacity (i) represents that the entity for which that party is acting already exists and (ii) shall Deliver to the other Party and Escrow Holder, within 3 Days After Acceptance, evidence of authority to act in that capacity (such as but not limited to: applicable portion of the trust or Certification Of Trust (Probate Code § 18100.5), letters testamentary, court order, power of attorney, corporate resolution, or formation documents of the business entity).

**29. JOINT ESCROW INSTRUCTIONS TO ESCROW HOLDER:**

    **A. The following paragraphs, or applicable portions thereof, of this Agreement constitute the joint escrow instructions of Buyer and Seller to Escrow Holder,** which Escrow Holder is to use along with any related counter offers and addenda, and any additional mutual instructions to close the escrow: paragraphs 1, 3, 4B, 5A, 6, 7, 9, 11C, 18, 19G, 24, 27A, 28, 29, 35, 38, 39, 40, 41 and paragraph D of the section titled Real Estate Brokers on page 11. If a Copy of the separate compensation agreement(s) provided for in paragraph 27A, or paragraph D of the section titled Real Estate Brokers on page 11 is deposited with Escrow Holder by Broker, Escrow Holder shall accept such agreement(s) and pay out from Buyer's or Seller's funds, or both, as applicable, the Broker's compensation provided for in such agreement(s). The terms and conditions of this Agreement not set forth in the specified paragraphs are additional matters for the information of Escrow Holder, but about which Escrow Holder need not be concerned. Buyer and Seller will receive Escrow Holder's general provisions, if any, directly from Escrow Holder and will execute such provisions within the time specified in paragraph 7C(1)(c). To the extent the general provisions are inconsistent or conflict with this Agreement, the general provisions will control as to the duties and obligations of Escrow Holder only. Buyer and Seller will execute additional instructions, documents and forms provided by Escrow Holder that are reasonably necessary to close the escrow and, as directed by Escrow Holder, shall pay to Escrow Holder or HOA or HOA management company or others any fee required by paragraphs 7, 11 or elsewhere in the Agreement.

    **B.** A Copy of this Agreement including any counter offer(s) and addenda shall be delivered to Escrow Holder within **3 Days** After Acceptance (or _____ ). Buyer and Seller authorize Escrow Holder to accept and rely on Copies and Signatures as defined in this Agreement as originals, to open escrow and for other purposes of escrow. The validity of this Agreement as between Buyer and Seller is not affected by whether or when Escrow Holder Signs this Agreement. Escrow Holder shall provide Seller's Statement of Information to Title company when received from Seller. If Seller delivers an affidavit to Escrow Holder to satisfy Seller's FIRPTA obligation under paragraph 11C, Escrow Holder shall deliver to Buyer a Qualified Substitute statement that complies with federal Law.

    **C.** Brokers are a party to the escrow for the sole purpose of compensation pursuant to paragraph 27A and paragraph D of the section titled Real Estate Brokers on page 11. Buyer and Seller irrevocably assign to Brokers compensation specified in paragraph 27A, and irrevocably instruct Escrow Holder to disburse those funds to Brokers at Close Of Escrow or pursuant to any other mutually executed cancellation agreement. Compensation instructions can be amended or revoked only with the written consent of Brokers. Buyer and Seller shall release and hold harmless Escrow Holder from any liability resulting from Escrow Holder's payment to Broker(s) of compensation pursuant to this Agreement.

    **D.** Upon receipt, Escrow Holder shall provide Seller and Seller's Broker verification of Buyer's deposit of funds pursuant to paragraph 3A and 3B. Once Escrow Holder becomes aware of any of the following, Escrow Holder shall immediately notify all Brokers: (i) if Buyer's initial or any additional deposit or down payment is not made pursuant to this Agreement, or is not good at time of deposit with Escrow Holder; or (ii) if Buyer and Seller instruct Escrow Holder to cancel escrow.

    **E.** A Copy of any amendment that affects any paragraph of this Agreement for which Escrow Holder is responsible shall be delivered to Escrow Holder within **3 Days** After mutual execution of the amendment.

**30. REMEDIES FOR BUYER'S BREACH OF CONTRACT:**

    **A. Any clause added by the Parties specifying a remedy (such as release or forfeiture of deposit or making a deposit non-refundable) for failure of Buyer to complete the purchase in violation of this Agreement shall be deemed invalid unless the clause independently satisfies the statutory liquidated damages requirements set forth in the Civil Code.**

    **B. LIQUIDATED DAMAGES: If Buyer fails to complete this purchase because of Buyer's default, Seller shall retain, as liquidated damages, the deposit actually paid. If the Property is a dwelling with no more than four units, one of which Buyer intends to occupy, then the amount retained shall be no more than 3% of the purchase price. Any excess shall be returned to Buyer. Except as provided in paragraph 19G, release of funds will require mutual, Signed release instructions from both Buyer and Seller, judicial decision or arbitration award. AT TIME OF ANY INCREASED DEPOSIT BUYER AND SELLER SHALL SIGN A SEPARATE LIQUIDATED DAMAGES PROVISION INCORPORATING THE INCREASED DEPOSIT AS LIQUIDATED DAMAGES (C.A.R. FORM RID).**

Buyer's Initials X____ / MSM          Seller's Initials ____ / ____

**31. DISPUTE RESOLUTION:**

    **A. MEDIATION:** The Parties agree to mediate any dispute or claim arising between them out of this Agreement, or any resulting transaction, before resorting to arbitration or court action through the C.A.R. Consumer Mediation Center (**www.consumermediation.org**) or through any other mediation provider or service mutually agreed to by the Parties. The Parties also agree to mediate any disputes or claims with Broker(s), who, in writing, agree to such mediation prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. Mediation fees, if any, shall be divided equally among the Parties involved. If, for any dispute or claim to which this paragraph applies, any Party (i) commences an action without first attempting to resolve the matter through mediation, or (ii) before commencement of an action, refuses to mediate after a request has been made, then that Party shall not be entitled to recover attorney fees, even if they would otherwise be available to that Party in any such action. THIS MEDIATION PROVISION APPLIES WHETHER OR NOT THE ARBITRATION PROVISION IS INITIALED. Exclusions from this mediation agreement are specified in paragraph 31C.

Buyer's Initials ( X____ )( X MSM )          Seller's Initials ( ____ )( ____ )

**RIPA REVISED 12/18 (PAGE 9 OF 12)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

DocuSign Envelope ID: A41D3644-E39D-4E09-97EE-BFD54AFB6844

Property Address: **5271 Locksley Ave, Oakland, CA 94618**                   Date: **January 28, 2020**

**B. ARBITRATION OF DISPUTES:**
The Parties agree that any dispute or claim in Law or equity arising between them out of this Agreement or any resulting transaction, which is not settled through mediation, shall be decided by neutral, binding arbitration. The Parties also agree to arbitrate any disputes or claims with Broker(s), who, in writing, agree to such arbitration prior to, or within a reasonable time after, the dispute or claim is presented to the Broker. The arbitrator shall be a retired judge or justice, or an attorney with at least 5 years of transactional real estate Law experience, unless the parties mutually agree to a different arbitrator. The Parties shall have the right to discovery in accordance with Code of Civil Procedure §1283.05. In all other respects, the arbitration shall be conducted in accordance with Title 9 of Part 3 of the Code of Civil Procedure. Judgment upon the award of the arbitrator(s) may be entered into any court having jurisdiction. Enforcement of this agreement to arbitrate shall be governed by the Federal Arbitration Act. Exclusions from this arbitration agreement are specified in paragraph 31C.

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY."

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

Buyer's Initials  X L  /  MSM                   Seller's Initials  MW  /  _____

**C. ADDITIONAL MEDIATION AND ARBITRATION TERMS:**
(1) **EXCLUSIONS:** The following matters are excluded from mediation and arbitration: (i) a judicial or non-judicial foreclosure or other action or proceeding to enforce a deed of trust, mortgage or installment land sale contract as defined in Civil Code §2985; (ii) an unlawful detainer action; and (iii) any matter that is within the jurisdiction of a probate, small claims or bankruptcy court.
(2) **PRESERVATION OF ACTIONS:** The following shall not constitute a waiver nor violation of the mediation and arbitration provisions: (i) the filing of a court action to preserve a statute of limitations; (ii) the filing of a court action to enable the recording of a notice of pending action, for order of attachment, receivership, injunction, or other provisional remedies; or (iii) the filing of a mechanic's lien.
(3) **BROKERS:** Brokers shall not be obligated nor compelled to mediate or arbitrate unless they agree to do so in writing. Any Broker(s) participating in mediation or arbitration shall not be deemed a party to the Agreement.

32. **SELECTION OF SERVICE PROVIDERS:** Brokers do not guarantee the performance of any vendors, service or product providers ("Providers"), whether referred by Broker or selected by Buyer, Seller or other person. Buyer and Seller may select ANY Providers of their own choosing.
33. **MULTIPLE LISTING SERVICE ("MLS"):** Brokers are authorized to report to the MLS a pending sale and, upon Close Of Escrow, the sales price and other terms of this transaction shall be provided to the MLS to be published and disseminated to persons and entities authorized to use the information on terms approved by the MLS.
34. **ATTORNEY FEES:** In any action, proceeding, or arbitration between Buyer and Seller arising out of this Agreement, the prevailing Buyer or Seller shall be entitled to reasonable attorneys fees and costs from the non-prevailing Buyer or Seller, except as provided in paragraph 31A.
35. **ASSIGNMENT:** Buyer shall not assign all or any part of Buyer's interest in this Agreement without first having obtained the written consent of Seller. Such consent shall not be unreasonably withheld unless otherwise agreed in writing. Any total or partial assignment shall not relieve Buyer of Buyer's obligations pursuant to this Agreement unless otherwise agreed in wiring by Seller (C.A.R. Form AOAA).
36. **EQUAL HOUSING OPPORTUNITY:** The Property is sold in compliance with federal, state and local anti-discrimination Laws.
37. **TERMS AND CONDITIONS OF OFFER:**
This is an offer to purchase the Property on the above terms and conditions. The liquidated damages paragraph or the arbitration of disputes paragraph is incorporated in this Agreement if initialed by all Parties or if incorporated by mutual agreement in a counter offer or addendum. If at least one but not all Parties initial, a counter offer is required until agreement is reached. Seller has the right to continue to offer the Property for sale and to accept any other offer at any time prior to notification of Acceptance. Buyer has read and acknowledges receipt of a Copy of the offer and agrees to the confirmation of agency relationships. If this offer is accepted and Buyer subsequently defaults, Buyer may be responsible for payment of Brokers' compensation. This Agreement and any supplement, addendum or modification, including any Copy, may be Signed in two or more counterparts, all of which shall constitute one and the same writing.
38. **TIME OF ESSENCE; ENTIRE CONTRACT; CHANGES:** Time is of the essence. All understandings between the Parties are incorporated in this Agreement. Its terms are intended by the Parties as a final, complete and exclusive expression of their Agreement with respect to its subject matter, and may not be contradicted by evidence of any prior agreement or contemporaneous oral agreement. If any provision of this Agreement is held to be ineffective or invalid, the remaining provisions will nevertheless be given full force and effect. Except as otherwise specified, this Agreement shall be interpreted and disputes shall be resolved in accordance wth the Laws of the State of California. **Neither this Agreement nor any provision in it may be extended, amended, modified, altered or changed, except in writing Signed by Buyer and Seller.**
39. **DEFINITIONS:** As used in this Agreement:
   **A.** "Acceptance" means the time the offer or final counter offer is accepted in writing by a Party and is delivered to and personally received by the other Party or that Party's authorized agent in accordance with the terms of this offer or a final counter offer.

Buyer's Initials ( X _____ )( x  MSM )                   Seller's Initials (  MW )( _____ )
RIPA REVISED 12/18 (PAGE 10 OF 12)

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   5271 Locksley Ave

Property Address: **5271 Locksley Ave, Oakland, CA 94618**                    Date: **January 28, 2020**

B. **"Agreement"** means this document and any counter offers and any incorporated addenda, collectively forming the binding agreement between the Parties. Addenda are incorporated only when Signed by all Parties.

C. **"C.A.R. Form"** means the most current version of the specific form referenced or another comparable form agreed to by the parties.

D. **"Close Of Escrow"** or **"COE"** means the date the grant deed, or other evidence of transfer of title, is recorded.

E. **"Copy"** means copy by any means including photocopy, NCR, facsimile and electronic.

F. **"Days"** means calendar days. However, after Acceptance, the last **Day** for performance of any act required by this Agreement (including Close Of Escrow) shall not include any Saturday, Sunday, or legal holiday and shall instead be the next Day.

G. **"Days After"** means the specified number of calendar days after the occurrence of the event specified, not counting the calendar date on which the specified event occurs, and ending at 11:59 PM on the final day.

H. **"Days Prior"** means the specified number of calendar days before the occurrence of the event specified, not counting the calendar date on which the specified event is scheduled to occur.

I. **"Deliver", "Delivered"** or **"Delivery"**, unless otherwise specified in writing, means and shall be effective upon: personal receipt by Buyer or Seller or the individual Real Estate Licensee for that principal as specified in the section titled Real Estate Brokers on page 11, regardless of the method used (i.e., messenger, mail, email, fax, other).

J. **"Electronic Copy"** or **"Electronic Signature"** means, as applicable, an electronic copy or signature complying with California Law. Buyer and Seller agree that electronic means will not be used by either Party to modify or alter the content or integrity of this Agreement without the knowledge and consent of the other Party.

K. **"Law"** means any law, code, statute, ordinance, regulation, rule or order, which is adopted by a controlling city, county, state or federal legislative, judicial or executive body or agency.

L. **"Repairs"** means any repairs (including pest control), alterations, replacements, modifications or retrofitting of the Property provided for under this Agreement.

M. **"Signed"** means either a handwritten or electronic signature on an original document, Copy or any counterpart.

40. **EXPIRATION OF OFFER:** This offer shall be deemed revoked and the deposit, if any, shall be returned to Buyer unless the offer is Signed by Seller and a Copy of the Signed offer is personally received by Buyer, or by **Erik Schuler** _____, who is authorized to receive it, by 5:00 PM on the third Day after this offer is signed by Buyer (or by _____ ☐ AM/ ☒ PM, on _____ (date)).

☐ One or more Buyers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-B) for additional terms.

Date **01/28/2020** _____ BUYER **X** _Xiao Hui_

(Print name) **WAMC Holdings** ___ B8130070542C4DB...

Date _____ BUYER **X** _Nai Chio Saephanh, Member_

(Print name) **Jing Yi Construction** ___ 13D70EE84796489...

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

41. **ACCEPTANCE OF OFFER:** Seller warrants that Seller is the owner of the Property, or has the authority to execute this Agreement. Seller accepts the above offer and agrees to sell the Property on the above terms and conditions, and agrees to the above confirmation of agency relationships. Seller has read and acknowledges receipt of a Copy of this Agreement, and authorizes Broker to Deliver a Signed Copy to Buyer.

☐ (If checked) SELLER'S ACCEPTANCE IS **SUBJECT TO ATTACHED COUNTER OFFER (C.A.R. Form SCO or SMCO) DATED:** _____

☐ One or more Sellers is signing the Agreement in a representative capacity and not for him/herself as an individual. See attached Representative Capacity Signature Disclosure (C.A.R. Form RCSD-S) for additional terms.

Date _2-7-2020_ SELLER _Mae Phillips_

**(Print name)** _____

Date _____ SELLER _____

**(Print name)** _____

☐ Additional Signature Addendum attached (C.A.R. Form ASA).

(____/____)  **(Do not initial if making a counter offer.) CONFIRMATION OF ACCEPTANCE:** A Copy of Signed Acceptance was
(Initials)  personally received by Buyer or Buyer's authorized agent on (date) _____ at _____ ☐ AM/ ☐ PM.
A binding Agreement is created when a Copy of Signed Acceptance is personally received by Buyer or Buyer's authorized agent whether or not confirmed in this document. Completion of this confirmation is not legally required in order to create a binding Agreement; it is solely intended to evidence the date that Confirmation of Acceptance has occurred.

**RIPA REVISED 12/18 (PAGE 11 OF 12)**



**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 11 OF 12)**

Case: 19-40887   Doc# 103   Filed: 02/07/20   Entered: 02/07/20 16:39:22   Page 14 of 21

**REAL ESTATE BROKERS:**
A. **Real Estate Brokers are not parties to the Agreement between Buyer and Seller.**
B. **Agency relationships are confirmed as stated in paragraph 2.**
C. If specified in paragraph 3A(2), Agent who submitted the offer for Buyer acknowledges receipt of deposit.
D. **COOPERATING (BUYER'S) BROKER COMPENSATION:** Seller's Broker agrees to pay Buyer's Broker and Buyer's Broker agrees to accept, out of Seller's Broker's proceeds in escrow, the amount specified in the MLS, provided Cooperating Broker is a Participant of the MLS in which the Property is offered for sale or a reciprocal MLS. If Seller's Broker and Buyer's Broker are not both Participants of the MLS, or a reciprocal MLS, in which the Property is offered for sale, then compensation must be specified in a separate written agreement (C.A.R. Form CBC). Declaration of License and Tax (C.A.R. Form DLT) may be used to document that tax reporting will be required or that an exemption exists.
E. **PRESENTATION OF OFFER:** Pursuant to Standard of Practice 1-7, if Buyer's Broker makes a written request, Seller's Broker shall confirm in writing that this offer has been presented to Seller.

| | | |
|---|---|---|
| Buyer's Brokerage Firm *Compass* | | DRE Lic. #*01866771* |
| By *Erik Schuler* | *Erik Schuler* DRE Lic. # *01509384* | Date *01/28/2020* |
| By ___7E83719C198D415... | DRE Lic. # | Date |
| Address *1414 Park Ave.* | City*Alameda* | State *CA* Zip *94501* |
| Telephone *(510)919-9485* Fax | E-mail *erik@teamschuler.com* | |
| Seller's Brokerage Firm *Compass* | | DRE Lic. #*01527235* |
| By | *Andrea Gordon* DRE Lic. # *01233563* | Date *2/9/20* |
| By | DRE Lic. # | Date |
| Address | City | State Zip |
| Telephone Fax | E-mail | |

---

**ESCROW HOLDER ACKNOWLEDGMENT:**
Escrow Holder acknowledges receipt of a Copy of this Agreement, (if checked, ☐ a deposit in the amount of $ _____ ),
counter offer numbers _____ ☐ Seller's Statement of Information and _____
_____ , and agrees to act as Escrow Holder subject to paragraph 29 of this Agreement, any
supplemental escrow instructions and the terms of Escrow Holder's general provisions.

Escrow Holder is advised that the date of Confirmation of Acceptance of the Agreement as between Buyer and Seller is _____

| | |
|---|---|
| Escrow Holder _____ | Escrow # _____ |
| By _____ | Date _____ |
| Address _____ | |
| Phone/Fax/E-mail _____ | |
| Escrow Holder has the following license number # _____ | |
| ☐ Department of Business Oversight, ☐ Department of Insurance, ☐ Department of Real Estate. | |

---

**PRESENTATION OF OFFER:** ( _____ ) Seller's Broker presented this offer to Seller on _____ (date).
Broker or Designee Initials

**REJECTION OF OFFER:** ( _____ )( _____ ) No counter offer is being made. This offer was rejected by Seller on _____ (date).
Seller's Initials

©2018, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.

Buyer's Initials ( X ___ )( X *MSM* )           Seller's Initials ( ___ )( ___ )

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
*a subsidiary of the CALIFORNIA ASSOCIATION OF REALTORS®*
525 South Virgil Avenue, Los Angeles, California 90020

**RIPA REVISED 12/18 (PAGE 12 OF 12)**



**RESIDENTIAL INCOME PROPERTY PURCHASE AGREEMENT (RIPA PAGE 12 OF 12)**

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.ziplogix.com     5271 Berkeley Ave

DocuSign Envelope ID: 58CD0486-5DD1-4797-82A4-3EFA2849A62B

CALIFORNIA
ASSOCIATION
OF REALTORS®

**CONTINGENCY REMOVAL No.** ___1___
(C.A.R. Form CR, Revised, 6/16)

C❍MPASS

In accordance with the terms and conditions of the: ☐ Residential Purchase Agreement (C.A.R. Form RPA-CA), ☐ Request For Repair (C.A.R. Form RR), ☐ Response And Reply To Request For Repair (C.A.R. Form RRRR) or ☒ Other **_Residential Income Purchase_**
**_Agreement_** ("Agreement"),
dated **_01/28/2020_** , on property known as **_5271 Locksley Ave, Oakland, CA 94618_** ("Property"),
between **_NAMC Holdings, Jing Yi Construction_** ("Buyer")
and ("Seller").

## I. BUYER REMOVAL OF BUYER CONTINGENCIES:

1. With respect to any contingency and cancellation right that Buyer removes, unless otherwise specified in a separate written agreement between Buyer and Seller, Buyer shall conclusively be deemed to have: **(i)** completed all Buyer Investigations and review of reports and other applicable information and disclosures; **(ii)** elected to proceed with the transaction; and **(iii)** assumed all liability, responsibility and, expense, **if any**, for Repairs, corrections, or for the inability to obtain financing. Waiver of statutory disclosures is prohibited by law.

2. Buyer removes those contingencies specified below.
   **A. ONLY the following individually checked Buyer contingencies are removed:**
      1. ☐ Loan (Paragraph 3J)
      2. ☐ Appraisal (Paragraph 3I)
      3. Buyer's Investigation Contingency (Paragraph 12)
         A. ☐ Only the physical inspection portion of Buyer's Investigation (Paragraph 12)
         B. ☐ All Buyer Investigations other than a physical inspection (Paragraph 12)
         C. ☐ Entire Buyer's Investigation Contingency (Paragraph 12)
      4. ☐ Condominium/Planned Development (HOA or OA) Disclosures (Paragraph 10F)
      5. ☐ Reports/Disclosures (Paragraphs 7 and 10)
      6. ☐ Title: Preliminary Report (Paragraph 13)
      7. ☐ Sale of Buyer's Property (Paragraph 4B)
      8. ☐ Review of documentation for leased or liened items (Paragraph 8B(5))
      9. ☐ Other: _____
      10. ☐ Other: _____
   **OR B.** ☒ **ALL Buyer contingencies are removed, EXCEPT:** ☐ Loan Contingency (Paragraph 3J); ☐ Appraisal Contingency (Paragraph 3I); ☐ Contingency for the Sale of Buyer's Property (Paragraph 4B); ☐ Condominium/Planned Development (HOA) Disclosures (Paragraph 10F); ☒ Other **_5 day buyers investigation_**
   **OR C.** ☐ **BUYER HEREBY REMOVES ANY AND ALL BUYER CONTINGENCIES.**

3. Once all contingencies are removed, whether or not Buyer has satisfied him/herself regarding all contingencies or received any information relating to those contingencies, Buyer may not be entitled to a return of Buyer's deposit if Buyer does not close escrow. This could happen even if, for example, Buyer does not approve of some aspect of the Property or lender does not approve Buyer's loan.

**NOTE:** Paragraph numbers refer to the California Residential Purchase Agreement (C.A.R. Form RPA-CA). Applicable paragraph numbers for each contingency or contractual action in other C.A.R. contracts are found in Contract Paragraph Matrix (C.A.R. Form CPM).

01/28/2020

Buyer X _Xiao Hong Li, President_    Date
NAMC Holdings    01/28/2020
Buyer X _Nai Chio Saephanh, Member_    Date
Jing Yi Construction

## II. SELLER REMOVAL OF SELLER CONTINGENCIES: Seller hereby removes the following Seller contingencies:
☐ Finding of replacement property (C.A.R. Form SPRP); ☐ Closing on replacement property (C.A.R. Form SPRP)
☐ Other _____

Seller _____    Date _____

Seller _____    Date _____

( _____ ) (Initials) **CONFIRMATION OF RECEIPT:** A copy of this signed Contingency Removal was personally received by ☐ Buyer ☐ Seller or authorized agent on **2/7/20** (date), at _____ ☐ AM / ☐ PM.

© 2019, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats. THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS®. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, LLC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

**CR REVISED 6/16 (PAGE 1 OF 1)**

**CONTINGENCY REMOVAL (CR PAGE 1 OF 1)**

Dated as of September 03, 2019 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

ALTA/CLTA Homeowner's (EAGLE) Policy of Title Insurance (2013) and ALTA Ext Loan Policy 1056.06 (06-17-06) if the land described is an improved residential lot or condominium unit on which there is located a one-to-four family residence; or ALTA Standard Owner's Policy 2006 (WRE 06-17-06) and the ALTA Loan Policy 2006 (06-17-06) if the land described is an unimproved residential lot or condominium unit

A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

MAE PHILLIPS, AN UNMARRIED WOMAN, subject to proceedings pending in the Bankruptcy Court of the NORTHERN District of the U. S. District Court, California entitled in re: MAE EDDIE PHILLIPS FKA MAE EDDIE GRAVES, debtor, Case No. 19-40887, wherein a petition for relief was filed on APRIL 16, 2019

The estate or interest in the land hereinafter described or referred to covered by this Report is:

FEE

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.   General and special taxes and assessments for the fiscal year 2019-2020, a lien not yet due or payable.

2.   Assessment liens, if applicable, collected with the general and special taxes, including but not limited to those disclosed by the reflection of the following on the tax roll:

Community Facilities District ROCKRIDGE LIBRARY C.F.D.-MEASURE L.

3.   The lien of special tax assessed pursuant to Chapter 2.5 commencing with Section 53311 of the California Government Code for Community Facilities District No. A/C-3, as disclosed by Notice of Special Tax Lien recorded January 31, 2019 as INSTRUMENT NO. 2019-015593 of Official Records.

4.  The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

5.  A deed of trust to secure an original indebtedness of $295,000.00 recorded NOVEMBER 03, 2003 as INSTRUMENT NO. 2003-652864 OF OFFICIAL RECORDS.
    Dated:              OCTOBER 27, 2003
    Trustor:            MAE PHILLIPS, AN UNMARRIED WOMAN
    Trustee:            JOAN H. ANDERSON
    Beneficiary:        MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
    LENDER:             VITEK REAL ESTATE INDUSTRIES GROUP, INC. DBA VITEK
                        MORTGAGE GROUP.

    A document recorded JANUARY 23, 2017 as INSTRUMENT NO. 2017-016868 OF OFFICIAL RECORDS provides that LAW OFFICES OF LES ZIEVE was substituted as trustee under the deed of trust.

    A notice of default recorded MARCH 15, 2017 as INSTRUMENT NO. 2017-062223 OF OFFICIAL RECORDS.

    According to the public records, the beneficial interest under the deed of trust has been assigned to U.S. BANK TRUST NATIONAL ASSOCIATION, AS TRUSTEE OF THE LODGE SERIES III TRUST by various assignments, the last of which was recorded March 19, 2019 as INSTRUMENT NO. 2019-048944 of Official Records.

    A notice of trustee's sale recorded MARCH 22, 2019 as INSTRUMENT NO. 2019-051744 OF OFFICIAL RECORDS.

6.  Lien for THE DELINQUENT BUSINESS TAX DEBTS AND ADMINISTRATIVE FEES in favor of CITY OF OAKLAND FINANCE AND MANAGEMENT AGENCY REVENUE DIVISION-BT LIEN

    Against:            MAE PHILLIPS
    Amount:             $542.75
    Recorded:           January 28, 2013 as INSTRUMENT NO. 2013-035174  OF OFFICIAL
                        RECORDS.

7.  Lien for THE DELINQUENT BUSINESS TAX DEBTS AND ADMINISTRATIVE FEES in favor of CITY OF OAKLAND FINANCE AND MANAGEMENT AGENCY REVENUE DIVISION-BT LIEN

    Against:            MAE PHILLIPS
    Amount:             $510.94
    Recorded:           July 30, 2013 as INSTRUMENT NO. 2013-263454  OF OFFICIAL RECORDS.

8.  A certified copy of a judgment or an abstract thereof, recorded September 09, 2014 as INSTRUMENT NO. 2014-220749 of Official Records.
    Court:              SUPERIOR COURT OF CALIFORNIA COUNTY OF
                        ALAMEDA COUNTY SUPERIOR COURT
    Case No.:           RS13698523
    Debtor:             MAE PHILLIPS
    Creditor:           ELLEN VANDER LAAN
    Amount:             $7,465.00, and any other amounts due thereunder

9.  Lien for THE DELINQUENT BUSINESS TAX DEBTS AND ADMINISTRATIVE FEES in favor of CITY OF OAKLAND REVENUE MANAGEMENT BUREAU FINANCE DEPARTMENT-BT LIEN

Against:      MAE PHILLIPS
Amount:      $2,171.33
Recorded:     December 14, 2018 as INSTRUMENT NO. 2018-237682 OF OFFICIAL
                RECORDS.

10.    Proceedings pending in the Bankruptcy Court of the NORTHERN District of the U.S. District Court,
California, entitled in re: MAE EDDIE PHILLIPS FKA MAE EDDIE GRAVES, debtor, Case No. 19-40887,
wherein a petition for relief was filed under Chapter 13 on APRIL 16, 2019.

11.    Lien for THE DELINQUENT BUSINESS TAX DEBTS AND ADMINISTRATIVE FEES in favor of CITY OF
OAKLAND REVENUE MANAGEMENT BUREAU FINANCE DEPARTMENT-BT LIEN

Against:      MAE PHILLIPS
Amount:      $776.50
Recorded:     August 02, 2019 as INSTRUMENT NO. 2019-150067 OF OFFICIAL
                RECORDS.

12.    Rights of parties in possession.

| **INFORMATIONAL NOTES** |
| --- |

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.   General and special taxes and assessments for the fiscal year 2018-2019.

|  |  |
| --- | --- |
| First Installment: | $3,098.32, PAID |
| Penalty: | $0.00 |
| Second Installment: | $3,098.32, PAID |
| Penalty: | $0.00 |
| Tax Rate Area: | 17-001 |
| A. P. No.: | 014-1230-003 |

2.   This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Multi Family Residence  known as 5271-5273 LOCKSLEY AVENUE, OAKLAND, CA.

3.   According to the public records, there has been no conveyance of the land within a period of twenty-four months prior to the date of this report, except as follows:

None

NOTE to proposed insured lender only: No Private transfer fee covenant, as defined in Federal Housing Finance Agency Final Rule 12 CFR Part 1228, that was created and first appears in the Public Records on or after February 8, 2011, encumbers the Title except as follows: None

The map attached, if any, may or may not be a survey of the land depicted hereon. First American expressly disclaims any liability for loss or damage which may result from reliance on this map except to the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title insurance policy, if any, to which this map is attached.

## LEGAL DESCRIPTION

Real property in the City of Oakland, County of Alameda, State of California, described as follows:

LOT 16, AS SAID LOT IS SHOWN ON THE "MAP OF LOCKSLEY SQUARE, OAKLAND TOWNSHIP, ALAMEDA COUNTY, CALIFORNIA", FILED MARCH 7, 1893, IN BOOK 13, OF MAPS PAGE 65, IN THE OFFICE OF THE COUNTY RECORDER OF ALAMEDA COUNTY.

APN: 014-1230-003